**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ZENIA CHAVARRIA, individually, and on behalf of other members of the general public similarly situated, <br> *Plaintiff-Appellee*, <br><br> v. <br><br> RALPHS GROCERY COMPANY, an Ohio Corporation, <br> *Defendant-Appellant*. | No. 11-56673 <br><br> D.C. No. 2:11-cv-02109-DDP-VBK <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted
August 8, 2013—Pasadena, California

Filed October 28, 2013

Before: Richard C. Tallman, Richard R. Clifton,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Clifton

# SUMMARY[*]

## Arbitration

The panel affirmed the district court's denial of defendant grocery company's motion to compel arbitration in an action asserting claims under California labor law on behalf of the plaintiff and a proposed class of other grocery employees.

The grocery company sought to compel arbitration of the plaintiff's individual claim pursuant to its arbitration policy, to which all employees acceded upon submitting applications for employment. The panel affirmed the district court's holding that the arbitration policy was unconscionable under California contract law and therefore unenforceable.

The panel held that the policy was procedurally unconscionable because it was a condition of applying for employment and was presented on a "take it or leave it" basis. In addition, its terms were not provided to the plaintiff until three weeks after she had agreed to be bound by it.

The panel held that the arbitration policy was substantively unconscionable because it was unjustifiably one-sided to such an extent that it "shocked the conscience." Specifically, the policy's arbitrator selection process would always produce an arbitrator proposed by the defendant in employee-initiated arbitration proceedings; the policy precluded institutional arbitration administrators, which have established rules and procedures to select a neutral arbitrator;

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

and the policy's arbitrator-fee-apportionment provision would have the effect of pricing employees out of the dispute resolution process. The panel distinguished *Kilgore v. KeyBank National Ass'n*, 718 F.3d 1052 (9th Cir. 2013) (en banc) (holding that mere risk that plaintiff will face prohibitive costs is too speculative to justify invalidating arbitration agreement), on the basis that the defendant's policy's fee provision stood by other unconscionable terms and was not speculative.

The panel held that the state law supporting the unconsionability holding was not preempted by the Federal Arbitration Act because it applied to contracts generally and did not in practice impact arbitration agreements disproportionately. The panel held that the Supreme Court's decision in *American Express Corp. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013) (upholding arbitration policy with class waiver provision on basis that expense of proving statutory remedy did not eliminate right to pursue that remedy), did not preclude it from considering the cost that the defendant's arbitration agreement imposed on employees in order for them to bring a claim.

The panel affirmed the decision of the district court denying the defendant's motion to compel arbitration and remanded the case for further proceedings.

**COUNSEL**

Steven B. Katz (argued), Linda S. Husar, and Mara Matheke, Reed Smith LLP, Los Angeles, California, for Defendant-Appellant.

Glenn A. Danas (argued), Capstone Law, Los Angeles, California; Mark Yablonovich, Neda Roshanian, and Michael D. Coats, Law Offices of Mark Yablonovich, Los Angeles, California, for Plaintiff-Appellee.

**OPINION**

CLIFTON, Circuit Judge:

Defendant Ralphs Grocery Company appeals the district court's denial of its motion to compel arbitration. Plaintiff Zenia Chavarria filed an action alleging violations of the California Labor Code and California Business and Professions Code §§ 17200 *et seq*. She asserted claims on behalf of herself and a proposed class of other Ralphs employees. Ralphs moved to compel arbitration of her individual claim pursuant to its arbitration policy, to which all employees acceded upon submitting applications for employment with Ralphs. The district court denied the motion, holding that Ralphs' arbitration policy was unconscionable under California law and therefore unenforceable.

Ralphs argues that its policy is not unconscionable under California law and in the alternative that the Federal Arbitration Act ("FAA") preempts California law. The FAA provides that arbitration agreements must be enforced except

"upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA preempts a contract defense, such as unconscionability, that may be generally applicable to any contract but disproportionately impacts arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011).

We affirm. We conclude that Ralphs' arbitration policy is unconscionable under California law, and that the state law supporting that conclusion is not preempted by the FAA.

## I.  Background

Plaintiff Zenia Chavarria completed an employment application seeking work with Defendant Ralphs Grocery Company. Chavarria obtained a position as a deli clerk with Ralphs and worked in that capacity for roughly six months. After leaving her employment with Ralphs, Chavarria filed this action, alleging on behalf of herself and all similarly situated employees that Ralphs violated various provisions of the California Labor Code and California Business and Professions Code §§ 17200 *et seq*. Ralphs moved to compel arbitration of her individual claim pursuant to an arbitration policy incorporated into the employment application. Chavarria opposed the motion, arguing that the arbitration agreement was unconscionable under California law.

By completing an employment application with Ralphs, all potential employees agree to be bound by Ralphs' arbitration policy. The application contains an acknowledgment that the terms of the mandatory and binding arbitration policy have been provided for the applicant's review. Ralphs' policy contains several provisions central to this appeal.

Paragraph 7 governs the selection of the single arbitrator who will decide the dispute.**[1]** It provides that, unless the

---

**[1]** Paragraph 7 provides in full:

> This Arbitration Policy, any arbitration proceedings held pursuant to this Arbitration Policy, and any proceedings concerning arbitration under this Arbitration Policy are subject to and governed by the Federal Arbitration Act, 9 U.S.C. section 1 et seq. (the "F.A.A."). In accordance with Section 3 of the F.A.A., the Qualified Arbitrator (as defined herein) must interpret, apply and enforce this Arbitration Policy as written. Unless the parties agree otherwise, the "Qualified Arbitrator" must be a retired state or federal judge (excluding retired administrative law judges and hearing officers) from the state jurisdiction or federal judicial district in which the Covered Dispute(s) arose or will be arbitrated, and neither the American Arbitration Association ("AAA") nor the Judicial Arbitration & Mediation Service ("JAMS") will be permitted to administer any arbitration held under or pursuant to this Arbitration Policy. The parties to any arbitration as described in this Arbitration Policy will select and appoint a Qualified Arbitrator by mutual agreement. If the parties do not mutually agree on the selection and appointment of a Qualified Arbitrator, the following selection method will be used to select and appoint a Qualified Arbitrator: (1) Each party to the arbitration proceeding will propose a list of three Qualified Arbitrators that they want appointed to hear and decide the Covered Dispute(s); and (2) The parties will alternate in striking one name from any other party's list of proposed Qualified Arbitrators, with the first strike to be made by a party who has not demanded arbitration pursuant to this Arbitration Policy, followed by a continuing rotation of alternating adverse parties until there is only one proposed Qualified Arbitrator that has not been stricken, who will be deemed to be the parties' selected and appointed Qualified Arbitrator to

parties agree otherwise, the arbitrator must be a retired state or federal judge. It explicitly prohibits the use of an administrator from either the American Arbitration Association ("AAA") or the Judicial Arbitration and Mediation Service ("JAMS").

If the parties do not agree on an arbitrator, the policy provides for the following procedure:

(1) Each party proposes a list of three arbitrators;

(2) The parties alternate striking one name from the other party's list of arbitrators until only one name remains;

(3) The party "who has not demanded arbitration" makes the first strike from the respective lists; and

(4) The lone remaining arbitrator decides the claims.

In practice, the arbitrator selected through this process will invariably be one of the three candidates nominated by the party that did not demand arbitration.

Paragraph 10 concerns attorney and arbitration fees and costs.[2] It specifies that each party must pay its own attorney

---

hear and decide the Covered Dispute(s) that are the subject of the arbitration proceedings.

[2] Paragraph 10 provides in full:

Each party to the arbitration will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. Ralphs (or any of them who are parties to the

fees, subject to a later claim for reimbursement under applicable law. The provision regarding arbitration fees, including the amount to be paid to the arbitrator, is more than a little convoluted. Ultimately, it provides that the arbitrator's fees must be apportioned at the outset of the arbitration and must be split evenly between Ralphs and the employee unless a decision of the U.S. Supreme Court directly addressing the issue requires that they be apportioned differently.

Paragraph 13 of the policy permits Ralphs to unilaterally modify the policy without notice to the employee. The

---

arbitration proceedings) in all cases where required by settled and controlling legal authority will pay up to all of the Qualified Arbitrator's and arbitration fees, as apportioned by the Qualified Arbitrator at the outset of the arbitration proceedings in accordance with such legal authority and after the parties have received notice and an opportunity to be heard on the subject. In all instances in which there is a dispute over the apportionment of the Qualified Arbitrator's or arbitration fees, such dispute is a Covered Dispute under this Arbitration Policy which must be resolved only by the Qualified Arbitrator, who must apply and follow only decisions of the United States Supreme Court in resolving such dispute, which will be deemed controlling notwithstanding any contrary or differing decisions of any other court. In the event settled and controlling legal authority does not require that one party or another bear a greater share of the Qualified Arbitrator's or arbitration fees, such fees will be apportioned equally between each set of adverse parties.

employee's continued employment constitutes acceptance of any modification.[3]

The district court held that Ralphs' arbitration policy was unconscionable under California law, and it accordingly denied Ralphs' motion to compel arbitration. Ralphs appeals the district court's denial under 9 U.S.C. § 16.

## II. Discussion

Ralphs argues that the district court erred when it held that the arbitration policy was unconscionable under California law. Ralphs also contends that federal law requires that the policy be enforced in accordance with its terms, even if the policy is unconscionable under California law, and that therefore the district court was required to compel arbitration. We review de novo the denial of a motion to compel arbitration. *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004).

---

[3] Paragraph 13 provides in full:

> This Arbitration Policy is the full and complete policy and agreement between the parties relating to the formal resolution of Covered Disputes. This Arbitration Policy may not be modified except in writing, or as otherwise expressly permitted or required by this Arbitration Policy or controlling law. The submission of an application for employment, acceptance of employment or continuation of employment with the Company by an Employee is deemed the Employee's acceptance of this Arbitration Policy. No signature by an Employee or the Company is required for this Arbitration Policy to apply to Covered Disputes.

The FAA provides that any contract to settle a dispute by arbitration shall be valid and enforceable, "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects both that (a) arbitration is fundamentally a matter of contract, and (b) Congress expressed a "liberal federal policy favoring arbitration." *Concepcion*, 131 S. Ct. at 1745 (citation and internal quotation marks omitted). Arbitration agreements, therefore, must be placed on equal footing with other contracts. *Id.*

Like other contracts, arbitration agreements can be invalidated for fraud, duress, or unconscionability. *Id.* at 1746. A defense such as unconscionability, however, cannot justify invalidating an arbitration agreement if the defense applies "only to arbitration or [derives its] meaning from the fact that an agreement to arbitrate is at issue." *Id.* The U.S. Supreme Court has held that state rules disproportionately impacting arbitration, though generally applicable to contracts of all types, are nonetheless preempted by the FAA when the rule stands as an obstacle to the accomplishment of Congress's objectives in enacting the FAA. *Id.* at 1748.

No single rule of unconscionability uniquely applicable to arbitration is at issue in this case. We must therefore apply California's general principle of contract unconscionability. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000); *see Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) (en banc) (applying California's general principle of unconscionability to an arbitration agreement). The parties dispute whether the Ralphs arbitration policy is unconscionable under California contract principles.

*A. Unconscionability under California Law*

Under California law, a contract must be both procedurally and substantively unconscionable to be rendered invalid. *Armendariz*, 6 P.3d at 690. California law utilizes a sliding scale to determine unconscionability—greater substantive unconscionability may compensate for lesser procedural unconscionability. *Id.* Applying California law, the district court held that the arbitration agreement in this case was both procedurally unconscionable and substantively unconscionable. We agree.

1.   Procedural Unconscionability

Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement. *Ferguson v. Countrywide Credit Indus., Inc*., 298 F.3d 778, 783 (9th Cir. 2002); *A & M Produce Co. v. FMC Corp.*, 186 Cal. Rptr. 114, 121–22 (Ct. App. 1982). Oppression addresses the weaker party's absence of choice and unequal bargaining power that results in "no real negotiation." *A & M Produce*, 186 Cal. Rptr. at 122. Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party. *Parada v. Super. Ct.*, 98 Cal. Rptr. 3d 743, 757 (Ct. App. 2009).

The district court held that Ralphs' arbitration policy was procedurally unconscionable for several reasons. The court found that agreeing to Ralphs' policy was a condition of applying for employment and that the policy was presented on a "take it or leave it" basis with no opportunity for Chavarria to negotiate its terms. It further found that the

terms of the policy were not provided to Chavarria until three weeks after she had agreed to be bound by it. This additional defect, the court held, multiplied the degree of procedural unconscionability.

Ralphs argues that the policy is not procedurally unconscionable because Chavarria was not even required to agree to its terms. Ralphs bases this contention on a provision in the employment application that provides, "Please sign and date the employment application . . . to acknowledge you have read, understand & agree to the following statements." The word "please," Ralphs contends, belies any suggestion of a requirement. Ralphs argues that Chavarria could have been hired without signing the agreement.

Ralphs' argument ignores the terms of the policy itself, which bound Chavarria regardless of whether she signed the application. The policy provides that "[n]o signature by an Employee or the Company is required for this Arbitration Policy to apply to Covered Disputes." That Ralphs asked nicely for a signature is irrelevant. The policy bound Chavarria and all other potential employees upon submission of their applications.

These circumstances are similar to others where we have held agreements to be procedurally unconscionable. In *Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. 2007), we held that an arbitration agreement was procedurally unconscionable under California law because it was imposed upon employees as a condition of their continued employment. *Id.* at 1074–75. We explained, "where . . . the employee is facing an employer with 'overwhelming bargaining power' who 'drafted the contract and presented it

to [the employee] on a take-it-or-leave-it basis,' the clause is procedurally unconscionable." *Id.* at 1075 (quoting *Nagrampa*, 469 F.3d at 1284). Likewise, in *Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010), we held that "a contract is procedurally unconscionable under California law if it is 'a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" *Id.* at 996 (citing *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003)). Chavarria could only agree to be bound by the policy or seek work elsewhere. Ralphs' policy meets the standard under which we have previously found arbitration provisions in employment contracts to be procedurally unconscionable.

Further, we have held that the degree of procedural unconscionability is enhanced when a contract binds an individual to later-provided terms. *Pokorny*, 601 F.3d at 997. Ralphs did not provide Chavarria the terms of the arbitration policy until her employment orientation, three weeks after the policy came into effect regarding any dispute related to her employment. The employment application merely contains a one-paragraph "notice" of the policy. The policy itself is a four-page, single-spaced document with several complex terms. *See Harper v. Ultimo*, 7 Cal. Rptr. 3d 418, 422 (Ct. App. 2003) (holding that a contract was procedurally unconscionable because the customer was forced to obtain the terms from another source "to find out the full import of what he or she is about to sign"). Ralphs' arbitration policy fits squarely within these decisions, so the district court did not err when it held that the policy was procedurally unconscionable.

2. Substantive Unconscionability

Chavarria must also demonstrate that Ralphs' arbitration policy is substantively unconscionable under California law. A contract is substantively unconscionable when it is unjustifiably one-sided to such an extent that it "shocks the conscience." *Parada v. Super. Ct.*, 98 Cal. Rptr. 3d 743, 759 (Ct. App. 2009) (quoting *Morris v. Redwood Empire Bancorp*, 27 Cal. Rptr. 3d 797, 809 (Ct. App. 2005)).

The district court found that several terms rendered Ralphs' arbitration policy substantively unconscionable. First, the court noted that Ralphs' arbitrator selection provision would always produce an arbitrator proposed by Ralphs in employee-initiated arbitration proceedings. Second, the court cited the preclusion of institutional arbitration administrators, namely AAA or JAMS, which have established rules and procedures to select a neutral arbitrator. Third, the court was troubled by the policy's requirement that the arbitrator must, at the outset of the arbitration proceedings, apportion the arbitrator's fees between Ralphs and the employee regardless of the merits of the claim. The court identified this provision as "a model of how employers can draft fee provisions to price almost any employee out of the dispute resolution process." The combination of these terms created a policy, according to the court, that "lacks any semblance of fairness and eviscerates the right to seek civil redress. . . . To condone such a policy would be a disservice to the legitimate practice of arbitration and a stain on the credibility of our justice system."

Ralphs contests the district court's conclusion and argues that the policy is not unconscionable. Indeed, Ralphs goes a step further and argues that the provisions relied upon by the

district court actually disadvantage Ralphs and are intended to benefit the employee. Ralphs' strained construction of its policy is unpersuasive. In fact, the policy includes further provisions that add to its unconscionability.

Regarding the arbitrator selection provision, Ralphs does not deny that its policy precludes the selection of an arbitrator proposed by the party demanding arbitration. Nor does it deny that the party selecting the arbitrator gains an advantage in subsequent proceedings. Ralphs' opening brief affirmatively acknowledges as much: "Section 7 of the [arbitration policy] disadvantages the party seeking arbitration in the arbitrator selection process, by ensuring that the party resisting arbitration is guaranteed an arbitrator of its choosing." Ralphs simply argues that it won't always be the party that is guaranteed an arbitrator of its choosing.

In particular, Ralphs argues that the district court erred in assuming that an employee will always be the party that demands arbitration. Ralphs contends that the opposite is true. In Ralphs' view, Chavarria, the employee in this case, will wind up with an arbitrator of her choosing because it is Ralphs that demanded arbitration. Ralphs' logic is thus:

(1) Chavarria brought a claim in federal court;

(2) Ralphs filed a motion to compel arbitration;

(3) If the court grants the motion, then the case will go to arbitration; and

(4) Ralphs will have "demanded" arbitration and thereby relinquished the first strike to Chavarria.

Chavarria will, under Ralphs' scenario, strike all three of the arbitrators on Ralphs' list, and the last remaining arbitrator will necessarily be from Chavarria's list.

It doesn't take a close examination of Ralphs' argument to reveal its flaws. To begin with, Ralphs' argument invites an employee to disregard the arbitration policy and to file a lawsuit in court, knowing that the claim is subject to arbitration. Even if Ralphs is willing to waste its time and money for that detour, it is not one that makes any sense for the court. We cannot endorse an interpretation that encourages the filing of an unnecessary lawsuit simply to gain some advantage in subsequent arbitration.

Perhaps more to the point, Ralphs' argument relies on a fanciful interpretation of its arbitration policy. Ralphs' motion to compel arbitration does not constitute a "demand for arbitration" as provided in the policy. Paragraph 9 of the arbitration policy provides that "[a] demand for arbitration . . . must be made in writing, comply with the requirements for *pleadings* under the [Federal Rules of Civil Procedure] and be served on the other party." (emphasis added). Ralphs' motion to compel arbitration is not a demand for arbitration under the terms of Ralphs' policy because it does not comply with the Federal Rules of Civil Procedure requirements governing pleadings. *See* Fed. R. Civ. P. 7(a) (providing that "[o]nly these pleadings are allowed" before listing types of pleadings); Fed. R. Civ. P. 8 (stating the general rules of pleading).

A fair construction of the agreement suggests that an employee, even after filing a frivolous claim in federal court, nonetheless must serve on Ralphs a demand for arbitration that complies with the Federal Rules. Accordingly, as the

district court found, Ralphs gets to pick the pool of potential arbitrators every time an employee brings a claim.

Even if it were the case that Ralphs' policy does not guarantee that Ralphs will always be the party with the final selection, the selection process is not one designed to produce a true neutral in any individual case. As noted above, Ralphs has not argued that the selection process is fair, acknowledging that the process "disadvantages the party seeking arbitration." Ralphs simply argues that sometimes the process may work to its disadvantage. But that is no consolation to the individual employee who is disadvantaged in her one and only claim. Forcing her into an arbitration process where Ralphs has an advantage cannot be justified by the possibility that some other employee might someday get the upper hand in that employee's arbitration against Ralphs.

Ralphs also argues that there is nothing of concern in its cost allocation provision because it simply follows the "American Rule" that each party shall bear its own fees and costs. Ralphs misses the point. The troubling aspect of the cost allocation provision relates to the arbitrator fees, not attorney fees.

The policy mandates that the arbitrator apportion those costs on the parties up front, before resolving the merits of the claims. Further, Ralphs has designed a system that requires the arbitrator to apportion the costs equally between Ralphs and the employee, disregarding any potential state law that contradicts Ralphs' cost allocation. Only a decision of the United States Supreme Court that directly addresses the issue can alter Ralphs' cost allocation term. This pseudo

"AEDPA deference"[4] has no place in employment claims governed by state law. There is no justification to ignore a state cost-shifting provision, except to impose upon the employee a potentially prohibitive obstacle to having her claim heard. Ralphs' policy imposes great costs on the employee and precludes the employee from recovering those costs, making many claims impracticable.

The significance of this obstacle becomes more apparent through Ralphs' representation to the district court that the fees for a qualified arbitrator under its policy would range from $7,000 to $14,000 per day. Ralphs' policy requires that an employee pay half of that amount—$3,500 to $7,000—for each day of the arbitration just to pay for her share of the arbitrator's fee. This cost likely dwarfs the amount of Chavarria's claims.[5]

The specific allocation of costs distinguishes this arbitration agreement from the provision we upheld in *Kilgore v. KeyBank National Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc). In that case, plaintiffs asserted only two arguments supporting unconscionability: (1) that a class waiver provision was unconscionable under California law; and (2) that students may not be able to afford arbitration

---

[4] Referring to the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214. *See* 28 U.S.C. § 2254(d)(1) (providing that, in the context of habeas corpus, courts must look to "clearly established Federal law, as determined by the Supreme Court of the United States").

[5] As the district court noted, Chavarria worked as a deli clerk for roughly five to six months and alleges she was not paid for rest and meal breaks as required by California law. Her monetary claims likely would not approach the cost of the arbitrator fees.

fees. *Id.* The first argument was expressly foreclosed by the U.S. Supreme Court in *Concepcion*, 131 S. Ct. at 1753. We rejected the second argument because the Court has held that the mere risk that a plaintiff will face prohibitive costs is too speculative to justify invalidating an arbitration agreement. *Kilgore*, 718 F.3d at 1058 (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90–91 (2000)). But in this case, not only does the cost provision stand beside other unconscionable terms, there is nothing speculative about it. Ralphs' term requires that the arbitrator impose significant costs on the employee up front, regardless of the merits of the employee's claims, and severely limits the authority of the arbitrator to allocate arbitration costs in the award.

The district court focused its substantive unconscionability discussion on these terms, and it was correct in doing so because the terms lie far beyond the line required to render an agreement invalid. We therefore need not discuss at length the additional terms in Ralphs' arbitration policy, such as the unilateral modification provision, which we have previously held to support a finding of substantive unconscionability. *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003) (holding that a unilateral modification provision, which provided more notice than required in Ralphs' policy, was substantively unconscionable).

3. The Sliding Scale of Unconscionability

Excessive procedural or substantive unconscionability may compensate for lesser unconscionability in the other prong. But here we have both. Ralphs has tilted the scale so far in its favor, both in the circumstances of entering the agreement and its substantive terms, that it "shocks the

conscience." *Parada*, 98 Cal. Rptr. 3d at 763. Accordingly, Ralphs' arbitration policy cannot be enforced against Chavarria under California law.

## B.  Preemption by the FAA

Federal law preempts state laws that stand as an obstacle to the accomplishment of Congress's objectives. *Concepcion*, 131 S. Ct. at 1753. Accordingly, the FAA preempts state laws that in theory apply to contracts generally but in practice impact arbitration agreements disproportionately. *Id.* at 1747.

California's unconscionability doctrine applies to all contracts generally and therefore constitutes "such grounds at law or in equity for the revocation of [a] contract." 9 U.S.C. § 2. But specific application of rules within that doctrine may be problematic. *See Concepcion*, 131 S. Ct. at 1753 (holding that California's rule making class waivers unconscionable was preempted by the FAA).

In this case, California's procedural unconscionability rules do not disproportionately affect arbitration agreements, for they focus on the parties and the circumstances of the agreement and apply equally to the formation of all contracts. The application of California's general substantive unconscionability rules to Ralphs' arbitration policy, however, warrants more discussion.

The Supreme Court's recent decision in *American Express Corp. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013), does not preclude us from considering the cost that Ralphs' arbitration agreement imposes on employees in order for them to bring a claim. In that case, plaintiffs argued that

the class waiver term of the arbitration agreement at issue effectively foreclosed vindication of the plaintiffs' federal rights: specifically, their rights under the Sherman Antitrust Act. *Id.* at 2310. Plaintiffs could not pursue their antitrust claims, they argued, because the experts required to prove an antitrust claim would cost hundreds of thousands of dollars, while the individual recovery would not exceed $40,000. *Id.* The class waiver provision did not foreclose effective vindication of that right, the Court reasoned, because "the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute an elimination of the *right to pursue* that remedy." *Id.* at 2311. The Court explicitly noted that the result might be different if an arbitration provision required a plaintiff to pay "filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable." *Id.* at 2310–11.

Ralphs' arbitration policy presents exactly that situation. In this case, administrative and filing costs, even disregarding the cost to prove the merits, effectively foreclose pursuit of the claim. Ralphs has constructed an arbitration system that imposes non-recoverable costs on employees just to get in the door.

The Supreme Court's holding that the FAA preempts state laws having a "disproportionate impact" on arbitration cannot be read to immunize all arbitration agreements from invalidation no matter how unconscionable they may be, so long as they invoke the shield of arbitration. Our court has recently explained the nuance: "*Concepcion* outlaws discrimination in state policy that is *unfavorable* to arbitration." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013) (emphasis added). We think this is a sensible reading of *Concepcion*.

This case illustrates the distinction. In addition to the problematic cost provision, Ralphs' arbitration policy contains a provision that unilaterally assigns one party (almost always Ralphs, in our view, as explained above) the power to select the arbitrator whenever an employee brings a claim. Of course, any state law that invalidated this provision would have a disproportionate impact on arbitration because the term is arbitration specific. But viewed another way, invalidation of this term is agnostic towards arbitration. It does not disfavor arbitration; it provides that the arbitration process must be fair.

If state law could not require some level of fairness in an arbitration agreement, there would be nothing to stop an employer from imposing an arbitration clause that, for example, made its own president the arbitrator of all claims brought by its employees. Federal law favoring arbitration is not a license to tilt the arbitration process in favor of the party with more bargaining power. California law regarding unconscionable contracts, as applied in this case, is not unfavorable towards arbitration, but instead reflects a generally applicable policy against abuses of bargaining power. The FAA does not preempt its invalidation of Ralphs' arbitration policy.

## III.    Conclusion

The arbitration policy imposed by Ralphs on its employees is unconscionable under California law. That law is not preempted by the FAA. We affirm the decision of the district court denying Ralphs' motion to compel arbitration, and we remand for further proceedings.

**AFFIRMED and REMANDED.**